# EXHIBIT "AA"

PALLADIA, INC.
PERSONNEL MANUAL

| Date 6/00 | HIRING PROCEDURE PROBATION | Section 4.3 Page 5 of 6 |

There is a six (6) month probationary period for all new employees.

**Performance Review**    At the end of the first three (3) month period, a written interim probation report will be prepared by the director/supervisor and discussed with the employee.

Within 10 days prior to the completion of the full six (6) month probationary period, barring practical difficulties, a written probation report will be prepared by the director/supervisor and discussed with the employee. A copy of this evaluation is to be forwarded to the appropriate Executive Manager for signature, and to the Human Resources Department. A determination will then be made to either accept the employee for regular employment, or, in certain circumstances, to continue the probation period for an additional period of time up to six (6) months. The decision to place an employee on an extended probation up to 6 months must be approved by the appropriate Executive Manager in writing, and the employee must be notified, in writing, prior to the expiration of his/her probation period, whenever the probation is to be extended.

During the probationary period, employment may be terminated at any time by the Agency without notice, with the approval of a member of the Executive Management team based upon a careful review of all relevant documentation.

The probationary period for clients who are hired by the Agency extends for six (6) months beyond the date that they achieve "Live-Out" status.

An individual transferring or being promoted to a new position within the agency will be placed on six (6) months probation and is subject to the above conditions.

Employees on probation may not be considered for vacant positions within the agency without the approval of the appropriate Executive Manager. Following completion of the probationary period, the staff member becomes a regular employee and is entitled to all the privileges of a regular employee.




# EXHIBIT "AB"

**John Ramos**

| | |
|---|---|
| **From:** | Corinne Workman |
| **Sent:** | Friday, September 01, 2006 12:02 PM |
| **To:** | George Lino; Lana Hallstein |
| **Cc:** | John Ramos |
| **Subject:** | Micheal Williams |

It is unfortunate that I most report that the House Monitor recently hired to Chelsea Court has been a no show for two days. This one incident has also involved Chris Mackellar not communicating ( he is being given a performance discussion) and Jennifer Brown who failed to communicate also. I was not made aware until 6am Friday morning, when Jennifer called to tell me she had worked all night in his place. Chris McKellar informed John Ramos that the last day Mr. Williams showed up for work was on Tuesday, 8/29/06 covering the 4 p.m. - 12 midnight shift.

Corinne Workman

9/5/2006

P 0258

# EXHIBIT "AC"

PALLADIA, INC.
PERSONNEL MANUAL

| Date | GROUNDS FOR DISMISSAL | Section 12.2 |
| 6/03 | MAY BE GROUNDS FOR TERMINATION | Page 3 of 4 |

Any/all of the following activities may be grounds for termination or immediate dismissal:

a.  Excessive or habitual lateness or absence. In general, five (5) absences in a ninety (90) day period, or a consistent pattern of absence, will be considered excessive, and the reasons for the absences may come under question. Tardiness, or leaving early, is as detrimental to the Agency as an absence. Four (4) such incidents in a thirty (30) day period will be considered a "tardiness pattern" and will carry the same weight as an absence. Other factors, like the degree of lateness will be considered.

b.  Engaging in Agency related business with a relation or family member. Business activities shall include, but not be limited to, vendors, consultants, and contractors.

c.  Acts which are contrary to Agency clinical methodology, philosophy, or policies.

d.  Physical, psychological, sexual, or verbal harassment of an employee or client, as outlined in Section 3.

e.  Failure to comply with the sign-in procedure. Falsification of time sheets.

f.  Failure to report to work as scheduled without notification to the Supervisor/Director ("no call/no show").

g.  Failure to complete the work shift without prior approval from the Supervisor/Director.

h.  Improper disclosure of "confidential" or "private" information.

i.  Improper disclosure of Protected Health Information as prescribed by HIPAA regulations.

l.  Any other act which the Agency's management, in its discretion, believes to be against the Agency's best interest, or where Management feels dismissal is necessary or appropriate.

k.  Willful falsification, misrepresentation, or dishonesty on an application for employment or work records. Alteration of records or other Agency documents.

l.  Engaging in behavior designed to create discord, interfering with another employee on the job, willfully restricting work output, or encouraging others to do the same.

m.  Unsatisfactory or careless work, failure to meet quality performance standards as explained by the Supervisor as required by the position.

n.  Sleeping on the job.

o.  Obscene or abusive language toward a Supervisor, employee, or client; disorderly or antagonistic conduct.



| Supercedes | Dated | Comments |
| Grounds For Termination | 7/01 | |

# EXHIBIT "AD"

A Community of Strength,
Help and Hope



## palladia

Palladia, Inc.
2006 Madison Avenue, New York, NY 10035  Phone: 212-979-8800  Fax: 212-979-0100  www.palladiainc.org

September 5, 2006

Michael Williams
2160 Wallace Avenue #5F
Bronx, NY 10462

Dear Mr. Williams:

We regret to inform you that your employment with Palladia, Inc. is being terminated effective close of business, Tuesday, August 29, 2006.  This action is being taken in accordance with Section 12.2(f) in Palladia's personnel manual: failure to report to work without notifying the Supervisor/Director (no call/no show) during the probationary period on the following days: August 30 and 31, 2006.

Please be advised in order to protect the confidentiality of our clients, you are not allowed to return or contact any other staff person at the facility without prior written authorization from the Sr. Director, Program Director or Human Resources. We trust that you will comply with this statement and if you need assistance contact one of the aforementioned.

Please return the Palladia identification card to the Human Resources Department. Please be advised that your final paycheck will be issued on 9/15/06 for 11.25 annual leave hours and may be picked up at 2006 Madison Avenue, Human Resources Department.

Should you have any questions, please contact the undersigned in the Human Resources Department at (212) 979-8800.

Sincerely,

George Dino
Sr. Director, Human Resources

/jr

**OFFICERS**

Judith D. Wallach, Ph.D
Chairperson

Bruno E. Ziolkowski
Vice Chairperson

Crystal L. Sampson
Treasurer

Alan R. Vogeler, Jr., Esq.
Secretary

Marshall Goldberg
Chairperson Emeritus

Jane Velez
President & CEO

**BOARD OF DIRECTORS**

Roger Boyle, Esq.
Marshall Goldberg
Lawrence Hamdan
Rory Kennedy
Galen Kirkland, Esq.
Hon. Milton Mollen
Crystal L. Sampson
Martha S. Stanitord
Julien J. Studley
Mary Beth C. Tully
Alan R. Vogeler, Jr., Esq.
Judith D. Wallach, Ph.D.
Bruno E. Ziolkowski

**COUNSEL**

Davidoff & Malito L.L.P.

# EXHIBIT "AE"

**DREITZER HOUSE**
**PALLADIA INC. HOUSING**

TO:        HUMAN RESOURCE ADMINISTRATOR

FROM:      CORINNE WORKMAN, DIRECTOR/DREITZER HOUSE

SUBJECT:   HARRY PHARR'S RESIGNATION

DATE:      7/12/2007

CC:        LANA HALLSTEIN, HARRY PHARR

    I was informed by my Administrative Assistant, Doreatha Gilmore that on Tuesday July 10th, 2007 she received a phone call from Mr. Harry Pharr. He informed her that he was resigning and would not be returning to work at Dreitzer House. He was giving a two day notice since his next scheduled work day is Thursday July 12, 2007.

    Mar Pharr has not returned keys or personal manual at this time.

# EXHIBIT "AF"

June 29, 2005

Ms. Corrine Workman
Palladia.

Dear Ms. Workman,

A few weeks ago, I came to you with a request for a family leave of absence. As you know, my wife has not been well and just had surgery 3 weeks ago.

You have been very understanding during my few absences; however, it has become clear to me that the state of my wife's health will continue to interfere with my job here and the demands of my position will continue to cause a strain.

It is therefore, with regret that I must resign from Palladia, Inc. effective July 12, 2005.

Sincerely,

*Jonathan Thomas*

Jonathan Thomas

# EXHIBIT "AG"

**Corinne Workman**

| | |
|---|---|
| **From:** | Jose Pacheco |
| **Sent:** | Monday, January 30, 2006 4:18 PM |
| **To:** | Corinne Workman |
| **Cc:** | John Ramos |
| **Subject:** | Letter of Resignation |

Dear Mrs Workman:

This is my letter of resignation, I would like to thank this company for the opportunity that they have given me by allowing me to work for this company, I hope that by me leaving this company on good terms and not closing the doors behind me I will be able  one day to come back this company and have  opportunity to work for them again.

Thank you,

Signed: _____    Witnessed : _____
Jose Pacheco

Effective January 31, 2006

1

# EXHIBIT "AH"

# Palladia, Inc
# Stratford House

**MEMORANDUM FROM**
Edward J. Slepin, MSW                    EJS
Program Director Stratford House

**TO:** Lana Hallstein, Senior Director Program Services Housing

**DATE:** 11/26/07

**SUBJECT:  New Hire**

This is a request to hire Mr. Irby for a full-time House Monitor's position at Stratford
house effective 12/17/07.  Mr. Irby is already employed part-time as a House Monitor at
Flora Vista.  I have spoken with his supervisor Ms. Corrine Workman who has
recommended his hiring.

Cc: Judy Archer
    Pat Johnson
    Simon Guzman
    Human Resources file

# EXHIBIT "AI"



**WILLIAM J. ROLD**
CHIEF ADMINISTRATIVE LAW JUDGE

###############
PRINCIPAL ADMINISTRATIVE LAW JUDGE

STATE OF NEW YORK
**UNEMPLOYMENT INSURANCE APPEAL BOARD**
**ADMINISTRATIVE LAW JUDGE SECTION**
P.O. BOX 697
NEW YORK NY 10014-0697
(212) 352-6982
FAX:(212) 352-6814

MARGARET O'BRIEN
LAURANCE I. PAVER
LEONARD R. SHAPIRO
PAULA YORKE
HOWARD M. MEISELES
ALTERIO A. COLETTI
SENIOR ADMINISTRATIVE LAW JUDGE

*DECISION AND NOTICE OF DECISION*
*DECISIÓN Y AVISO DE LA DECISIÓN TOMADA*

A.L.J. Case No. 007-17641

IN THE MATTER OF:

Mailed and Filed:

**OCT 3 1 2007**

CHARLES A WILIIAMS
5 WEST 91 STREET  #5E
NEW YORK NY 10024

PALLADIA
2006 MADISON AVE
NY NY 10038-1217

UNEMPLOYMENT ACTION CTR.
240 MERCER STREET
NEW YORK NY 10012-1507

PRIMARY CONTROL
1 FAIRCHILD CRT 290
PLAINVIEW NY 11803-

DAVID SILVER
248 WEST PARK AVENUE #157
LONG BEACH NY 11561

DAVID SILVER
248 PARK AVE. #157
LONG BEACH NY 11561-

Department of Labor Office: 831

Hearing Requested: July 18, 2007

**PLEASE TAKE NOTICE** that this decision has been duly mailed on the date listed above. If you appeared at the hearing and are not satisfied with this decision, you may appeal within **TWENTY DAYS** from the date this decision was mailed. Any party who failed to appear at the hearing has the right to apply to reopen the case. For the application to be granted, the party must apply within a reasonable time and must establish good cause for its failure to appear. **READ IMPORTANT INFORMATION ON REVERSE SIDE.**

**POR FAVOR TOME NOTA** que esta decisión ha sido debidamente enviada por correo en la fecha que aparece arriba. Si usted asistió a la audiencia y no está satisfecho con la decisión, usted puede apelar dentro de los **VEINTE DIAS** a partir de la fecha en que esta decisión fué enviada por correo. Cualquiera de las partes que falle en comparecer a la audiencia, tiene derecho de aplicar para que reabran su caso. Para que la apelación sea aceptada, la parte interesada debe aplicar dentro de un período de tiempo razonable y debe establecer buena causa por no haber comparecido a la audiencia. **LEA INFORMACIÓN IMPORTANTE AL REVERSO.**

**DOCUMENTO IMPORTANTE. PUEDE OBTENER UNA TRADUCCIÓN DEL MISMO LLAMANDO**
**AL 1-888-209-8124 (FUERA DEL ESTADO DE NUEVA YORK 1-877-358-5306)**

ISSUES:

Claimant's Application to Reopen Case No. 007-12334.
Employer's objection to claimant's entitlement.
Loss of employment through misconduct.

AB 665-0 (10/06)

The Department of Labor issued the initial determination holding the claimant eligible to receive benefits, effective. The employer requested a hearing and objected contending that the claimant should be disqualified from receiving benefits because the claimant lost employment through misconduct in connection with that employment and that wages paid to the claimant by such employer cannot be used to establish a future claim for benefits.

The Claimant has applied to reopen A.L.J. Case No. 007-12334. In that case, the Administrative Law Judge overruled the initial determination based upon a hearing on July 2, 2007 at which the employer testified and at which the claimant failed to appear.

A hearing was held at which testimony was taken. There were appearances by the claimant and on behalf of the employer.

FINDINGS OF FACT: The claimant was employed as a house manager for a non profit organization for about one year until October 31, 2007. On October 31st, the claimant worked his shift which was from midnight to 8:00 am. The claimant was at his post during the shift and the log book that he kept for the employer indicated what he was doing during the shift. The employer believed that the claimant was not at his post from 12:10 am to 3:42 am and that his log book failed to note such absence. As such, the employer terminated the claimant for the absence and its omission from the log book.

The claimant was not present for the hearing of July 2, 2007 because he wanted an opportunity to obtain representation.

OPINION:On application duly made, an Administrative Law Judge may reopen a case where a decision was made upon or following the default of a party if such party shows good cause for the default. (See, Appeal Board Rule 12 NYCRR 461.8.) The credible evidence establishes that the claimant failed to appear at the hearing in A.L.J. Case No. 007-12334 because of the above noted reason. I find that such circumstances constitute good cause for the default and that the application to reopen is therefore granted.

Pursuant to Labor Law § 593 (3), a claimant is disqualified from receiving benefits after having lost employment through misconduct in connection with that employment. Pursuant to Labor Law § 527, the wages paid in such employment cannot be used to establish a future claim for benefits.

The credible testimony establishes that the claimant was not absent from his post on October 31, 2006. While the claimant's co-worker testified that she did not see him at his post from about 12:10 am until 3:42 am, she did subsequently testify that she saw him at about 2:00 am. Further, the co-worker was unable to explain why she had written in the claimant's log book times that were reversed in noting her duties – putting in on the first line 2:08 am then 2:00 am on the second line. Given such inconsistency, I give greater weight to the claimant's testimony. As such, the claimant's conduct does not rise to the level of misconduct.

DECISION: The Claimant 's application to reopen A.L.J. Case No. 007-12334 is granted..

The initial determination is sustained.

The claimant is allowed benefits with respect to the issues decided herein.

/s/ Manuel S Marks

**Administrative Law Judge**

# EXHIBIT "AJ"

67

Williams

So I had said this is not a
vacation.  So I was only allowed one day off,
Wednesday, I believe, or maybe two days.  I
requested three and got two or requested two and
got one.

Q    You don't remember which?

A    No.

Q    You were told you couldn't have that
Saturday off, correct?

A    She told me I couldn't have
Saturday, correct.

Q    Was that scheduling or lack of
coverage?

A    I don't know.

Q    You did not come in Saturday?

A    That Saturday I called in, took a
personal day.  I had several vacation days.  I had
several personal days on the books.  I had several
sick days on the books.  I called in, took a
personal day.

Q    This was the day you were told you
couldn't have off because of scheduling, correct?

A    Yes.

I called in on time and early

# EXHIBIT "AK"

74

Williams

1

2          A      Yes.

3          Q      Other than Michael Williams, is

4    there anyone else you remember who was working as

5    a house monitor at Dreitzer?

6          A      I know Spivey used to work there at

7    that time.

8          Q      Who?

9          A      Spivey.

10         Q      Spivey?

11         A      Yes.

12         Q      Are you aware of any house monitors

13   that were terminated during your employment at

14   Dreitzer?

15         A      Michael Williams, I believe.

16         Q      Anyone else?

17         A      Luna.

18         Q      Do you know the reason why they were

19   terminated?

20         A      No.

21         Q      Do you know who replaced them?

22         A      No.

23         Q      Do you know who replaced you?

24         A      No.

25         Q      Do you know whether it's a male or

75

1                          Williams

2     female?

3            A     No.  I'm pretty sure it's a male.

4            Q     Do you know who replaced

5     Mr. Williams, Michael Williams?

6            A     A guy named Clark, Roscoe Clark,

7     Roscoe something.

8                      MR. SPUND:  Let's have this

9                  marked as Exhibit G, please.

10                     (Verified complaint was marked

11                 as Defendants' Exhibit G for

12                 identification, as of this date.)

13     BY MR. SPUND:

14            Q     Mr. Williams, before we go to this

15     document, do you know the names of any other house

16     monitors that were terminated during the year you

17     were there at Dreitzer or any facility Ms. Workman

18     supervised?

19            A     I don't know their names right off

20     my head, no.

21            Q     Do you know how many?

22            A     No, I don't know how many.

23            Q     Do you know the reason for any of

24     their terminations?

25            A     Not exactly, no.

# EXHIBIT "AL"

78

Williams

2   worked in the office behind me. I don't know his

3   name. I think his name was Michael or something.

4            I know she fired the janitor. She

5   fired Michael Williams, I mean Michael Williams,

6   Luna, the janitor and the caseworker, whatever his

7   title was.

8         Q     You don't know the reason why any of

9   those people were fired, do you?

10        A     I only know rumor. I can't know --

11   I mean, I may not, I have their records at my

12   house. I could go look.

13        Q     Sorry, I didn't understand what you

14   said.

15        A     I have copies of their records now,

16   but I didn't even bother to study it to see why

17   they were transferred, I just knew that.

18        Q     You say you only knew rumors. What

19   rumors do you know?

20        A     That Ms. Workman did not like to be

21   told anything.

22        Q     Any other rumors?

23        A     No. Basically, that was it. If you

24   had anything to say to her, you should avoid

25   advising her because she didn't take advice or

79

Williams

criticism.

Q    Is that criticism from anyone?

A    Yes.

Q    That would be male or female?

A    Yes, I would guess, yes.

Q    It says here that, again, Paragraph 4, "three have been transferred."

Do you see that?

A    Yes.

Q    Which three are you talking about?

A    Luna was transferred before he was let go.

Michael Williams was transferred, I believe, before he was let go.

Q    Anyone else?

A    I don't know their names.

Q    You say here three.  Did you know it then?

A    I don't know his name.

Q    When you say three here, you don't know who you were referring to as the third one, right?

A    No, I don't know.  At this time I can't remember who it was.

80

                              Williams

1

2      Q      My question was when you signed this

3  document, did you know who it was at that point in

4  time?

5      A      I don't know.  I probably did at

6  that time, yes.

7      Q      So you don't remember who it is now?

8      A      No.

9      Q      It says the in last paragraph, last

10  sentence of Paragraph 4.  "Both myself and another

11  housing monitor who were male were replaced by

12  females."

13      A      Right.

14      Q      What do you mean were "replaced by

15  females"?

16      A      I think it was a male, when

17  Mr. Danowsky would do double time, Ms. Manson

18  would also take some of those hours.

19      Q      They didn't take your position,

20  correct?

21           Your position of house monitor was

22  then filled by a male; isn't that correct?

23      A      I don't know.  If it's a nighttime

24  position, I assume it is filled by a male.

25      Q      Who was the other housing monitor

81

<pre>
 1                         Williams
 2   who was replaced by a female?
 3            A      I don't know.
 4            Q      You say, "myself and another housing
 5   monitor."
 6                   Do you know who you were referring
 7   to?
 8            A      No.
 9            Q      Did you know then?
10            A      I think so, yes.
11            Q      You don't remember who it is?
12            A      No.
13            Q      When you started working, you were
14   aware that there was a six-month probationary
15   period; is that correct?
16            A      Yes, I believe that was.
17            Q      You received a three-month
18   evaluation; is that correct?
19            A      Yes.
20                   MR. SPUND:  Could I have this
21            marked Exhibit H, please.
22                   (Document titled Probationary
23            Period Evaluation Report dated
24            1/17/06, Bates Nos. P0143 to P0144,
25            was marked as Defendants' Exhibit H
</pre>