UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

CHARLES WILLIAMS

          Plaintiff

                               Docket No. 07 cv 7720
                               (CM)(RLE)

      -against-

PALLADIA, INC. and CORINE WORKMAN

          Defendants

------------------------------------------------------------x

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE RULE 56

**DAVIDOFF MALITO & HUTCHER LLP**
**Attorneys for Defendants**
**200 Garden City Plaza**
**Suite 315**
**Garden City, New York 11530**
**(516) 248-6400**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................ 1

PROCEDURAL HISTORY............................................................................. 2

STATEMENT OF FACTS .............................................................................. 3

LEGAL ARGUMENT
POINT I
PLAINTIFF'S TITLE VII CLAIMS SHOULD BE DISMISSED ..................................... 3

    A.  The Summary Judgment Standard. .................................................. 3

    B. The Summary Judgment Standard in a Title VII case. ...................... 4

        1.  The McDonnell Douglas Burden Shifting Analysis: .................. 6

POINT II
MR. WILLIAMS CANNOT PROVE A PRIMA FACIE CASE OF GENDER
DISCRIMINATION .................................................................................... 8

    A.  Plaintiff Cannot Demonstrate That His Termination
        Occurred Under Circumstances Giving Rise to an Inference of
        Discrimination................................................................................ 9

POINT III
DEFENDANTS HAVE MET THEIR BURDEN OF PRODUCTION BY
ARTICULATING A LEGITIMATE BUSINESS REASON FOR PLAINTIFF'S
TERMINATION.......................................................................................... 14

POINT VI
PLAINTIFF CANNOT ESTABLISH THAT DEFENDANTS LEGITIMATE
BUSINESS REASON IS A PRETEXT FOR DISCRIMINATION................................. 16

    A.  The Same Actor Inference Negates Any Claim of Pretext: ............ 19

POINT V
THE STATE CLAIMS SHOULD BE DISMISSED...................................................... 20

    A.  The NYSHRL Claims Are Barred By The
        Doctrine of Election of Remedies.................................................. 21

SUBMISSION ............................................................................................ 22

80049419.4

i

## **TABLE OF AUTHORITIES**

**Cases**

*Abdu-Brisson v. Delta Air Lines, Inc.* 239 F.3d 456, 466 (2d Cir. 2001) *cert. den.* ........... 5

*Agugliaro v. Brooks Bros. Inc.* 927 F. Supp. 741, 747 (S.D.N.Y.1996)........................... 15

*Alfano v. Costello*, 294 F. 3d 365, 377 (2d Cir. 2002)..................................................... 18

*Al-Haideri v. The Trustees of Columbia University In the City of New York*, 2007 WL
2187102 at *3 (July 26, 2007) ........................................................................................ 20

*Allah v. City of New York Parks Dept.* 162 F. Supp.2d 270 (S.D.N.Y. 2001)
*aff'd* 47 Fed. Appx. 45, *cert. den.* 537 U.S. 1232, 123 S. Ct. 1357,
155 L.Ed.2d 196 (2003) ................................................................................................... 16

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-450, 106 S. Ct. 2505,
91 L.Ed.2d 202 (1986) ..................................................................................................... 3

*Ascione v. Pfizer, Inc.* 312 F. Supp.2d 572, 578 ( S.D.N.Y. 2004),
*aff'd* 138 Fed. Appx. 347 (2d Cir. 2005) ...................................................................... 18

*Bickerstaff v. Vassar College*, 196 F.3d 435, 446 (2d Cir. 1999) *cert. denied*,
530 U.S. 1242, 120 S. Ct. 2688, 147 L.Ed.2d 960 (2000)................................................. 6

*Brown v. Pensions Bds.* 488 F. Supp.2d 395, 406 ( S.D.N.Y. 2007)............................... 14

*Byrnie v. Town of Cromwell, Bd. of Educ.* 243 F. 3d 93, 103 (2d Cir. 2001)................... 18

*Campbell v. Alliance Nat'l Inc.*, 107 F.Supp.2d 234, 249-250 (S.D.N.Y. 2000) ....... 19, 20

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) .. 3, 4

*Cerwinski v. Insurance Services Offices, Inc.* 112 F.3d 503 ( 2d Cir. 1997),
*cert. den.* 522 U.S. 952, 118 S. Ct. 374, 139 L.Ed.2d  291 (1997)................................... 14

*Chambers v. TRM Copy Ctrs. Corp.* 43 F.3d 29, 40 (2d Cir. 1994)................................. 5

*Citroner v. Progressive Cas. Ins. Co.* 208 F. Supp.2d 328, 342 (E.D.N.Y. 2002)............. 9

*Contemporary Mission Inc. v. U.S. Postal* Service, 648 F. 2d 97, 107 n. 14
(2d Cir. 1981).................................................................................................................... 4

*Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 567 (2d Cir. 2000) ........................................ 16

*Dawson v. Bumble & Bumble*, 398 F.3d 211, 216 ( 2d Cir. 2005) ................................... 6

*Demoret v. Zegarlli*, 451 F. 3d 140, 149 (2d Cir. 2006)................................................... 5

*Dister v. The Continental Group, Inc.* 859 F.2d 1108, 1116 (2d Cir. 1998) ................... 18

*Farias v. Instructional Systems Inc.* 259 F.3d 91, 98 (2d Cir. 2001)................................ 8

*Ferrante v. American Lung Association*, 90 N.Y.2d 623, 665 N.Y.S.2d 25, 29 (1997)... 16

*Fisher v. Vassar College*, 114 F.3d 1332 (2d Cir. 1997) *cert. den.*
522 U.S. 1075, 118 S. Ct. 851, 139 L. Ed.2d 752 (1998).................................................... 7

*Forest v. Jewish Guild for the Blind,* 3 N.Y.3d 295, 786 N.Y.S.2d 382 (2004)................ 5

*Gallo v. Prudential Residential Servs. Ltd. Partnership*, 22 F.3d 1219, 1223
(2d Cir. 1994), *cert. den.* 481 U.S. 1029, 107 S. Ct. 1955, 95 L.Ed.2d 527 (1987) .......... 4

*Grady v. Affilated Cent., Inc.* 130 F.3d 553, 560 (2d Cir. 1997) *cert. den.*
525 U.S. 936, 119 S. Ct. 349, 142  L.ed2d 288 (1998)............................................... 19, 20

*Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1988.................................. 14

*Harlan Assocs. v. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) ......................... 4

*James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000)................................ 7

*Lamberson v. Six West Retail Acquisition, Inc.*, 122 F. Supp. 2d 502,
508 (S.D.N.Y. 2000); *Burdine*, at 252-56 .......................................................................... 7

*Lewis v. North General Hospital* 502 F. Supp.2d 390, 400 ( S.D.N.Y.2007) ................. 20

*Mario v. P & C Food Markets Inc.* 313 F. 3d 758, 767 (2d Cir. 2002)........................ 6,8

*Matsushita Elec. Industries Co.*, 475 U.S. 574,  586, 106 S.Ct. 1348, 89 L.Ed.2d 538
(1986)................................................................................................................................... 4

*McDonnell Douglas Corp. v. Green*, 411 U.S.792, 93 S. Ct. 1817,
36 L.Ed.2d 668 (1973) ......................................................................................................... 6

*Miller v. Taco Bell Corp.* 204 F.Supp.2d 456, 458 (E.D.N.Y. 2002)................................ 5

*Minton v. Lenox  Hill Hospital*, 160 F. Supp.2d 687, 696 (S.D.N.Y. 2001) .................... 18

*Mitchell v. Northern Westchester Hospital*, 171 F.Supp.2d 274, 278 ( S.D.N.Y.2001)..... 8

*Mittl v. New York State Division of Human Rights*, 100 N.Y.2d 326,
763 N.Y.S.2d 518, 520, (2003) ................................................................................... 5

*Moodie v. Federal Reserve Bank*, 58 F. 3d 879, 882 (2d Cir. 1995) ............................... 21

*Obabueki v. International Business Machine.* 145 F. Supp.2d 371, 386
(S.D.N.Y. 2001) *aff'd* 319 F.3d 87 (2d Cir. 2003) *cert. den.* 540 U.S. 940,
124 s. Ct. 311, 157 L Ed. 2d (2003 ............................................................................ 16

*Paluh v. HSBC USA*, 409 F. Supp.2d 178, 191 (W.D.N.Y. 2006) .................................... 9

*Patrick v. New York City Transit* Authority, 2007 WL 2071555 at *10
(E.D.N.Y. July 16, 2007) ............................................................................................. 4

*Ralking v. NYCTA*, 64 F. Supp.2d 989, 1000( E.D.N.Y. 1999)....................................... 19

*Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 120 S. Ct. 2097,
147 L.Ed.2d 105 (2000) ............................................................................................... 7

*Richardson v. Newburgh Enlarged City Sch. Dist.* 984 F. Supp. 735, 743-747
(S.D.N.Y.1997) ............................................................................................................ 9

*Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 169 ( 2d Cir. 2001) .................................... 17

*Ruane v. Continental Casualty Corp.* 1998 WL 292103 at *8
( S.D.N.Y. June 3, 1998) ........................................................................................... 20

*Satterfield v. United Parcel Serv., Inc.* 2003 WL 22251314, at *14
( S.D.N.Y. Sept. 30, 2003) ......................................................................................... 14

*Scaria v. Rubin*, 17 F. 3d 652, 654-655( 2d Cir. 1997) ................................................. 18

*Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 91 (2d Cir. 2001) *cert. den.*
534 U.S. 951, 122 S. Ct. 348, 151 L. Ed. 2d 263 (2001).................................................. 6

*St. Mary Honor Ctr.* 509 U.S. at 502. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 567
(2dCir. 2000)........................................................................................................... 6, 16

*St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S. Ct. 2742,
125 L.Ed.2d 407 (1993) ............................................................................................ 6, 7

*Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248,
101 S. Ct. 1089, 67 L.Ed.2d 207 (1981) ..................................................................... 6, 7

*Trigg v. New York City Transit Authority*, 2001 WL 868336 at *10
(E.D.N.Y. July 26, 2001) *aff'd* 50 Fed. Appx. 458 (2d Cir. 2002)................................... 11

*Whidbee v. Garzarelli Food Specialists, Inc.* 223 F.3d 62,75 (2d Cir. 2000) ................. 21

*White v. Home Depot, Inc.* 2008 WL 189865 at * 3, 4 ( E.D.N.Y. Jan. 17, 2008)........... 21

*York v . Ass'n of the Bar of the City of New York*, 286 F.3d 122, 127
(2d Cir. 2002) *cert. den.* 537 U.S. 1089, 123 S. Ct. 702, 154 L.Ed2d 633 (2002) ........... 21

## Statutes

42 U.S.C. § 2000e et. seq. ..................................................................................................... 1

Sen.R.Civ.P. 56 ...................................................................................................................... 1

Fed. R.Civ.P. 56(c) ................................................................................................................ 3

New York State Human Rights Law, Executive Law § 296 et. seq. ................................... 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
CHARLES WILLIAMS

            Plaintiff

                                Docket No. 07 cv 7720
                                (CM)(RLE)

    -against-

PALLADIA, INC. and CORINE WORKMAN

            Defendants

-------------------------------------------------------------x

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE RULE 56

### PRELIMINARY STATEMENT

Defendants' Palladia, Inc. ("Palladia") and Corinne Workman ("Ms. Workman"), sued herein as Corine Workman, respectfully submit this memorandum of law in support of their motion for summary judgment pursuant to Federal Rules of Civil Procedure Rule 56 and the Local Rules of this Court to dismiss the Complaint of plaintiff, Charles Williams ("Mr. Williams" or "plaintiff").

In his Complaint, plaintiff alleges that defendants discriminated against him on the basis of his gender – male- in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e et. seq. ("Title VII") and, pursuant to an Order of this Court dated January 4, 2008, the New York State Human Rights Law, Executive Law § 296 et. seq. ("NYSHRL").

As the Court will see, Mr. Williams' assertion of gender discrimination – that Ms. Workman has an animus towards men and he was terminated because he is a man- is based solely upon conjecture and speculation. Indeed, the uncontroverted evidence clearly shows that Palladia terminated Mr. Williams for cause and not because of his sex. Simply put, Mr. Williams cannot even prove a *prima facie* case of gender discrimination, let alone sufficient facts to warrant this case being tried before a jury.

Additionally, the NYSHRL claims, which were added to this Complaint by the Court (Exhibit "C") should be dismissed (a) as dismissal of the Title VII claims will also lead to dismissal of the NYSHRL claims and (b) by filing his initial complaint with the New York State Division of Human Rights (the "State Division") Mr. Williams elected his remedies and cannot sue in Federal Court for state law claims.

## PROCEDURAL HISTORY

This action was commenced by service of a Summons and Complaint, alleging gender and race discrimination, retaliation and "other acts" in violation of Title VII of the Civil Rights Act of 1964, as amended, upon the defendants. (Exhibit "A"). On November 12, 2007, defendants moved to (a) dismiss the Complaint as to Ms. Workman as Title VII does not provide for individual liability and (b) to dismiss those portions of the Complaint alleging discrimination based upon race, retaliation and "other acts" due to Mr. Williams' failure to exhaust his administrative remedies.

On January 4, 2008, at a conference before Judge Colleen McMahon, the Court granted defendants' motion and dismissed those portions of the Complaint. The Court however, deemed the Complaint amended to asset state law claims of gender discrimination and wrongful termination against Ms. Workman (Exhibit "C").

80049419.4                                2

On January 10, 2008, defendants filed their answer (Exhibit "D").

## STATEMENT OF FACTS

The Court is respectfully referred to the affidavits of Mark E. Spund, Esq. sworn to June 27, 2008, Corinne Workman, sworn to June 25, 2008, Lizzette Dombrowsky, sworn to June 26, 2008, Doretha Gilmore, sworn to June 25, 2008 and Judy Archer sworn to June 24, 2008 and the exhibits annexed thereto and defendants' Rule 56.1 Statement of Undisputed Facts for a complete recitation of the facts of this case.

## LEGAL ARGUMENT

## POINT I

## PLAINTIFF'S TITLE VII CLAIMS SHOULD BE DISMISSED

### A. The Summary Judgment Standard.

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of flaw.  Fed. R.Civ.P. 56(c).

The party moving for summary judgment is initially responsible for demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  The onus then shifts to the party resisting summary judgment to present evidence sufficient to satisfy every element of the claim.

The non-moving party is required to "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial." Id. at 324; see also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-450, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).  In that regard the party opposing summary judgment "may not rely on

conclusory allegations or unsubstantiated assertions" *Celotex Corp. v. Catrett*, 477 U.S. at 324. Mere speculation and conjecture is insufficient. *Harlan Assocs. v. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). Rather he must submit facts that are "material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicious." *Patrick v. New York City Transit* Authority, 2007 WL 2071555 at *10 (E.D.N.Y. July 16, 2007) quoting *Contemporary Mission Inc. v. U.S. Postal* Service, 648 F. 2d 97, 107 n. 14 (2d Cir. 1981). Simply put, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Industries Co.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) .

Where it is apparent that no rational finder of fact could find in favor of the non-moving party because the evidence to support its case is so slight, summary judgment should be granted. *Gallo v. Prudential Residential Servs. Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir. 1994), *cert. den.* 481 U.S. 1029, 107 S. Ct. 1955, 95 L.Ed.2d 527 (1987).

Summary judgment is appropriate here, both as to the Title VII and NYSHRL claims,  because there are no questions of material fact in dispute that would warrant a trial or support a finding in Mr. Williams' favor.  Accordingly, his claims for unlawful gender discrimination in violation of Title VII and the NYSHRL should be dismissed..

## B. The Summary Judgment Standard in a Title VII case.

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to compensation, terms conditions, or privileges of employment because of such individual's race, color, religion,

sex or national origin." 42 U.S.C. 2000e-2(a)(1).  Similarly, the NYSHRL states in

pertinent part that:

> 1.  It shall be an unlawful discriminatory practice:
>
> For an employer or licensing agency, because of
> the age, race, creed, color, national origin, sexual
> orientation, military status, sex disability, genetic
> predisposition or carrier status, or marital status of
> any individual to refuse to hire or employ or to
> bar or to discharge from employment such
> individual or to discriminate against such
> individual in compensation or in terms, conditions
> or privileges of employment.

The standards for establishing unlawful discrimination under Section 196 of the

NYSHRL are the same as those governing Title VII of the Civil Rights Act of 1964,

*Demoret v. Zegarlli*, 451 F. 3d 140, 149 (2d Cir. 2006); *Mittl v. New York State Division*

*of Human Rights*, 100 N.Y.2d 326, 763 N.Y.S.2d 518, 520, (2003).  See also, *Forest v.*

*Jewish Guild for the Blind,* 3 N.Y.3d 295, 786 N.Y.S.2d 382 (2004).

Summary judgment may be appropriate even in the fact intensive context of a

discrimination case.  *Abdu-Brisson v. Delta Air Lines, Inc.* 239 F.3d 456, 466 (2d Cir.

2001) *cert. den.*, and is available to reject discrimination claims in cases lacking genuine

issues of material fact.  *Chambers v. TRM Copy Ctrs. Corp.* 43 F.3d 29, 40 (2d Cir.

1994).  Indeed,

> Where an employer provides convincing evidence explaining
> its conduct and the plaintiff's case rests on conclusory
> allegations of discrimination, the court may properly conclude
> that there is no genuine issues of material fact and grant
> summary judgment to the employer.

*Miller v. Taco Bell Corp.* 204 F.Supp.2d 456, 458 (E.D.N.Y. 2002).

In a Title VII case summary judgment should be granted to defendants if the plaintiff either fails to establish a prima facie case with respect to his claims or, though establishing a *prima facie* case, cannot overcome defendants' legitimate non-discriminatory reason for the challenged employment decision. *Dawson v. Bumble & Bumble*, 398 F.3d 211, 216 ( 2d Cir. 2005).

### 1.    The McDonnell Douglas Burden Shifting Analysis:

The ultimate issue in this case is whether Plaintiff has met his burden of proving that his termination was motivated at least in part by an impermissible reason ie: that he was a man.

Courts analyzing employment discrimination claims and considering summary judgment motions under Title VII apply the three step burden shifting approach first set forth by the United States Supreme Court in a series of decisions beginning with *McDonnell Douglas Corp. v. Green*, 411 U.S.792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L.Ed.2d 207 (1981) and *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S. Ct. 2742, 125 L.Ed.2d 407 (1993). See also *Mario v. P & C Food Markets Inc.* 313 F. 3d 758, 767 (2d Cir. 20020); *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 91 (2d Cir. 2001) *cert. den.* 534 U.S. 951, 122 S. Ct. 348, 151 L. Ed. 2d 263 (2001).

Under this analysis the Complainant has the burden of providing a *prima facie* case of discrimination. See *St. Mary's , supra* at 506; *Bickerstaff v. Vassar College*, 196 F.3d 435, 446 (2d Cir. 1999) *cert. denied*, 530 U.S. 1242, 120 S. Ct. 2688, 147 L.Ed.2d 960 (2000).

If the Complainant succeeds in proving a *prima facie* case, the burden shifts to the respondent-employer to articulate a legitimate, non-discriminatory reason for the adverse employment decision. *Burdine, supra*, at 254.

Once the employer sets forth its legitimate non-discriminatory reason for the employment action, the presumption of discrimination is rebutted and it simply drops out of the picture. *St. Mary's, supra* at 510-511, *James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000).

The burden then shifts back to the employees to show, without the benefit of any presumptions, that the reason given for his termination, was pretextual and that the real reason was discrimination. *Lamberson v. Six West Retail Acquisition, Inc.*, 122 F. Supp. 2d 502, 508 (S.D.N.Y. 2000); *Burdine*, at 252-56. This step "mandates a case-by-case approach with a court examining the entire record to determine.

It is important to note, that while a plaintiff's establishment of a *prima facie* case shifts the "burden of production" to the defendants, the ultimate burden or persuading the fact finder that the employer intentionally discriminated against the employee remains at all times with the employee. *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 120 S. Ct. 2097, 147 L.Ed.2d 105 (2000) citing *Burdine*, at 253; *Fisher v. Vassar College*, 114 F.3d 1332 (2d Cir. 1997) *cert. den.* 522 U.S. 1075, 118 S. Ct. 851, 139 L. Ed.2d 752 (1998).

Here, Mr. Williams cannot prove a *prima facie* case of gender discrimination and his Complaint should be dismissed.

**POINT II**

**MR. WILLIAMS CANNOT PROVE A PRIMA FACIE CASE OF GENDER
DISCRIMINATION**

To make out a *prima facie* case of discrimination the plaintiff must establish that:

(1) he is a member of a protected class; (2) he is competent to perform the job or is

performing his duties satisfactorily; (3) he suffered an adverse employment decision or

action; and (4) the decision or action occurred under circumstances giving rise to an

inference of discrimination based on his membership in a protected class. *Mario v. P&C

Food Markets, Inc.*, 313 F.3d 758, 767 (2d Cir. 2002); *Farias v. Instructional Systems

Inc.* 259 F.3d 91, 98 (2d Cir. 2001). "If plaintiff fails to make out any of these four

criteria, the case must be dismissed." *Mitchell v. Northern Westchester Hospital*, 171

F.Supp.2d 274, 278 ( S.D.N.Y.2001).

For purposes of this motion only, defendants do not dispute that plaintiff is a

member of a protected class, that he was qualified for the job and that his termination

constituted an adverse employment action.

However, defendants submit that plaintiff cannot satisfy the fourth prong of the

test and thus prove a *prima facie* case - that his termination occurred under

circumstances giving rise to an inference of discrimination – as he has not , and can not,

proffer any evidence of discriminatory animus by Ms. Workman against men or against

plaintiff because he was a man.  Nor can he proffer any evidence that he was terminated

for any reason other than for cause.

Accordingly,. his claims of discrimination under both Title VII and the NYSHRL must fail. *Richardson v. Newburgh Enlarged City Sch. Dist.* 984 F. Supp. 735, 743-747 (S.D.N.Y.1997).

A.    **Plaintiff Cannot Demonstrate That His Termination Occurred Under Circumstances Giving Rise to an Inference of Discrimination.**

The courts have recognized that there "is no rigid rule about what circumstances allow an inference of discrimination." *Citroner v. Progressive Cas. Ins. Co.* 208 F. Supp.2d 328, 342 (E.D.N.Y. 2002). Thus, merely offering evidence that a plaintiff was a member of a protected category is insufficient to establish a *prima facie* case.

In *Paluh v. HSBC USA*, 409 F. Supp.2d 178, 191 (W.D.N.Y. 2006) the court succinctly identified the types of actions that would support an inference of discrimination at the *prima facie* state of analysis:

> [c]circumstances held to have given rise to the necessary inference of discrimination to establish the fourth element of a prima facie employment discrimination include (1) the employer sought to replace a discharged plaintiff with another person possessing the same qualifications, although not a member of the same protected class as the plaintiff; (2) the employer criticized the plaintiff's work performance in terms degrading to the protected class;(3) the employer made invidious comments about others in the plaintiff's protected class; (4) the employer treated more favorable employees not in the protected class; (5) the sequence of events leading to the adverse employment action and (6) the timing of the adverse employment action."

The record here is completely devoid of any of these actions and Mr. Williams proffers only conclusory assertions and speculations to support his claim of disparate treatment based upon his gender. Mr. Williams is unable to show any discriminatory animus by Ms. Workman towards him, as a man, or men in general, nor can he produce

any evidence that he was terminated because he was a man. Indeed, his allegations that Ms. Workman held an animus towards men is belied by all of the uncontroverted evidence present to the Court and his own admissions.

First: Mr. Williams was interviewed and hired by Ms. Workman in October, 2005 (Workman Aff. ¶ 12-14 – Exhibit "J") and she made the decision to terminate him (Workman Aff. ¶ 37 – Exhibit "Q").

Second: Contrary to his unsupported allegations Mr. Williams was not replaced by a woman. To the contrary he was replaced by another man – Nigel Garrett - who was interviewed and hired by Ms. Workman on December 1, 2006, and who is still employed at Palladia (Workman Aff. ¶ 5). Indeed, even Mr. Williams acknowledges that both he and Michael Williams, who is the other House Monitor that he claims was also terminated, were replaced by males (Tr. 75 – Exhibit "AK", Tr. 80-81 – Exhibit "AL").

Third: There is no evidence that Ms. Workman discriminated against men. At present there are eight House Monitors at the three facilities of which Ms. Workman is the program director, all of which are men and all of which were interviewed and hired by Ms. Workman. (Workman Aff. ¶ 52) Moreover, all of the House Monitors hired by Ms. Workman since 2005 for the House Monitor position were men. (Workman Aff. ¶ 52-89 – Exhibit "V" through "AH")

Fourth: Those House Monitors who are no longer employed at Palladia, were either terminated for cause or resigned. (Workman Aff. ¶ 52-89). Although alleging gender bias Mr. Williams admittedly did not know the reason why any of these House Monitors were terminated.(Tr. 75, Exhibit "AK").

Fifth: Mr. Williams heard rumors that Ms. Workman fired people because she did not like to be told anything, take advice or criticism from anyone. However, he admitted that that would be true for either males or females. (Tr. 78-79, Exhibit "AL").

Sixth: There is no evidence that Ms. Workman criticized plaintiff's work performance in terms degrading to the protected class.

Seventh: There is no evidence that Ms. Workman made invidious comments about others in the protected class – men in general or any other men.

Eighth: There is no evidence that Ms. Workman treated employees not in the protected class more favorably.

Ninth: Ms. Danowsky did not see Mr. Williams at his post at Dreitzer from 12:20 to 3:40 a.m. although she made a number of sweeps through the building (Danowsky Aff. ¶ 3-8, Exhibit "AW").

Tenth: Ms. Danowsky called Ms. Gilmore at 1:00 a.m. to report that Mr. Williams was not at Dreitzer ((Danowsky Aff. ¶ 6, Gilmore Aff. ¶ 3)

Eleventh: Mr. Williams admitted that he entered his work time on his Time Sheet for November 1, 2006 when he did not work that day (Exhibit "O", Tr. 142-144, Exhibit "AM").

Twelfth: Mr. Williams admitted that the falsified entry on his Time Sheet for November 1, 2006, was in his handwriting. (Exhibit "O", Tr. 142-144 – Exhibit "AM").

Thirteenth: Mr. Williams' claim that Palladia is still committing acts against him, relates to it contesting his unemployment payments, which it had an absolute right to do. (Tr. 152 – Exhibit "AN"). See, *Trigg v. New York City Transit Authority*, 2001 WL

868336 at *10 (E.D.N.Y. July 26, 2001) *aff'd* 50 Fed. Appx. 458 (2d Cir. 2002)(The

effort to deny a former employee unemployment benefits does not amount to an adverse

employment action ).

Fourteenth:  Mr. Williams acknowledges that the only "harassment" he suffered

was in June, 2006, regarding his using the social worker's office and chair during his

break and when he failed to return from his vacation in July, 2006. Both incidents

occurred prior to his allegedly asking for a raise. (Tr. 156-157 – Exhibit "AO", Tr. 158-

160 – Exhibit "AP", Tr. 170-172 – Exhibit "AU").

Fifteenth:  Mr. Williams admitted that he only saw Ms. Workman five or six

times during the entire course of his employment. (Tr. 157 – Exhibit "AO")

Sixteenth:  Mr. Williams termination was confirmed by George Lino, Sr. Director

of Human Resources and a man ( Workman Aff.  ¶ 37-38, 40-41 – Exhibits "Q", "R",

"S" & "T").

In essence Mr. Williams' entire case can be summarized by his testimony at Tr.

173-174 (Exhibit "AV").  Admitting that he received good evaluations from Ms.

Workman during his six month probationary period, Mr. Williams was unable to

articulate why she would fire him because he was a man when she hired him and gave

him good evaluations. (Tr. 173 – Exhibit "AV").  Moreover, he admitted that he had no

evidence that she had any animus towards men other than his own conjecture that "all the

men around there were being fired" (Tr. 173 – Exhibit "AV"). When questioned Mr.

Williams made a general remark about the men being fired or "moved out" and about

men being transferred, which he believed was done involuntarily. (Tr. 174 – Exhibit

"AV") referencing Michael Williams, George Lino, the janitor and the super at Dreitzer (Tr. 162-163 – Exhibit "AP").

However, the uncontroverted evidence is that those House Monitors that were transferred between the three facilities usually were transferred because they were being promoted from part- time to full time ie: Michael Williams – promoted from part time at Dreitzer to full time at Chelsea Court ( Workman Aff.  ¶ 59); Patrick Irby – promoted from part time at Chelsea Court to full time at Stafford House, another Palladia facility, at Ms. Workman's recommendation (Workman Aff.  ¶ 71); Roscoe Clark – promoted from part time at Dreitzer to full time at Chelsea Court (Workman Aff. ¶ 80).

The one other House Monitor that plaintiff referenced Ms. Workman firing was Michael Williams. As set forth above Mr. Williams was hired for a part time position by Ms. Workman and Ms. Workman promoted him to full time. However, during his probationary period Michael Williams failed to report to work or notify his supervisor and was terminated for cause. (Workman Aff. ¶  60-63 – Exhibit "AB").  The janitor and super mentioned by Mr. Williams were not supervised by Ms. Workman but by the property manager (Workman Aff. ¶ 92). Mr. Lino, Palladia's Sr. Director of Human Resources, was at a higher executive level than Ms. Workman and she had nothing to do with either his hiring or termination (Workman Aff.  ¶ 94).

In  essence, plaintiff cannot establish a *prima facie* case of gender discrimination because he has not, and cannot, proffer any evidence supporting an inference of discrimination by the defendants.

### POINT III

### DEFENDANTS HAVE MET THEIR BURDEN OF PRODUCTION BY ARTICULATING A LEGITIMATE BUSINESS REASON FOR PLAINTIFF'S TERMINATION.

Assuming arguendo that plaintiff has met his initial burden, which he has not, the burden of production then shifts to defendants to proffer a "legitimate non-discriminatory" business rational to justify the adverse employment action. *Burdine* 450 U.S. at 252-253.  Defendants' burden is "light" *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1988) and is a burden of "production not persuasion." *Reeves* 530 U.S. at 1432.

Here, defendants have stated a legitimate, non-discriminatory reason for terminating Mr. Williams which rebuts any presumption of gender discrimination.  This legitimate non-discriminatory business rational is set forth in great detail in the Workman, Danowsky and Gilmore affidavits.

An employer's belief that an employee has violated company policy is a legitimate, non-discriminatory business reason to terminate employment. *Cerwinski v. Insurance Services Offices, Inc.* 112 F.3d 503 ( 2d Cir. 1997), *cert. den.* 522 U.S. 952, 118 S. Ct. 374, 139 L.Ed.2d  291 (1997); *Brown v. Pensions Bds.* 488 F. Supp.2d 395, 406 ( S.D.N.Y. 2007) (granting summary judgment; plaintiff's violation of call-in  policy constitutes legitimate, non-discriminatory reason for termination); *Satterfield v. United Parcel Serv., Inc.* 2003 WL 22251314, at *14 ( S.D.N.Y. Sept. 30, 2003) ( plaintiff's violation of company policy constitutes legitimate, non-discriminatory reason for termination.).

Indeed, Courts in this Circuit have consistently rejected arguments by plaintiffs who denied that they committed the violation for which they were disciplined requiring only that the employer sincerely believed that the plaintiff committed the violation. *Agugliaro v. Brooks Bros. Inc.* 927 F. Supp. 741, 747 (S.D.N.Y.1996) ( granting summary judgment for employer where it terminated plaintiff's employment for sexually harassing a subordinate; holding that, even assuming that plaintiff did not actually sexually harass the subordinate, the incontrovertible evidence showed that the employer believed in good faith that he had done so.)

Within, the incontrovertible evidence shows that Mr. Williams was terminated because he left his post and falsified his time sheet.  Indeed, it is uncontroverted that Ms. Danowsky did not see Mr. Williams at his post at Dreitzer until approximately 3:40 a.m. and that she called Ms. Gilmore in the middle of the night ( Danowsky Aff. ¶ 6, Gilmore Aff. ¶3-6).  This incident was reported to Ms. Workman by Mr. Gilmore that night (Gilmore Aff. ¶ 5) and confirmed by a memo from Ms. Danowsky (Exhibit "AW").  Moreover, Ms. Workman herself reviewed the time sheet, knowing that Mr. Williams did not work on November 1, 2006, even though he had signed in ( Workman Aff. ¶ 36).

It is obvious that Ms. Workman had a good faith, legitimate business reason for terminating Mr. Williams, having nothing to do with his gender. Mr. Williams' broad speculation of some other nefarious reason for his termination is nothing more than conjecture and speculation.

## POINT VI

### PLAINTIFF CANNOT ESTABLISH THAT DEFENDANTS LEGITIMATE BUSINESS REASON IS A PRETEXT FOR DISCRIMINATION.

Defendants having met their burden of production of a legitimate business non-discriminatory reasons for their employment decision, the "plaintiff has an opportunity to show that the reason was merely a pretext for discrimination" *St. Mary Honor Ctr.* 509 U.S. at 502. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 567 ( 2d Cir. 2000)

To defeat defendants' motion, plaintiff must show the stated reason for his discharge was not the true basis for their decision to terminate him and that discrimination was the real reason. *Allah v. City of New York Parks Dept.* 162 F. Supp.2d 270 (S.D.N.Y. 2001) *aff'd* 47 Fed. Appx. 45, *cert. den.* 537 U.S. 1232, 123 S. Ct. 1357, 155 L.Ed.2d 196 (2003)  , *Cruz* supra at 567; *Ferrante v. American Lung Association*, 90 N.Y.2d 623, 665 N.Y.S.2d 25, 29 (1997).  To demonstrate the pretext necessary to survive a motion for summary judgment the plaintiff must make a substantial showing that defendants explanation was false. *Obabueki v. International Business Machine.* 145 F. Supp.2d 371, 386 (S.D.N.Y. 2001) *aff'd* 319 F.3d 87 (2d Cir. 2003) *cert. den.* 540 U.S. 940, 124 s. Ct. 311, 157 L Ed. 2d (2003).

In this case Mr. Williams has not presented any evidence that defendants' reason for terminating him was false or that discrimination was the real reason for his discharge. Simply put,  Mr. Williams cannot establish that his sex or gender was the real reason for Ms. Workman's decision to terminate him.

Here, plaintiff has not provided any evidence, let alone substantial evidence, that defendants' reason for terminating him was not the real reason for his termination.  To

80049419.4                                      16

the contrary the undisputed evidence establishes that plaintiff was terminated because he was away from his post in Drietzer for almost three hours and had falsified his time sheet.

Moreover, there is no evidence of discriminatory animus by defendants. Indeed, contrary to Mr. Williams protestations he was not replaced by a woman but by a man and Ms. Workman regularly hired men for the House Monitor position.

Other than his speculative allegation that Ms. Workman "coerced" Ms. Danowsky into lying he has not provided any evidence of any animus towards men. Moreover, there is no support for the allegation that Ms. Workman coerced anyone into lying. Indeed, the evidence is clear that Ms. Danowsky contacted Ms. Gilmore at around 1:00 a.m. when she could not find Mr. Williams at Dreitzer and that she did not see him at the facility until approximately 3:40 a.m. (Danowsky Aff. ¶ 6, Gilmore Aff. ¶3-6). Whether, she was misquoted at the unemployment hearing or mistaken as to the time is irrelevant. The undisputed testimony is that Mr. Williams was not at his post and this was reported to Ms. Danowsky's superior at the time it actually occurred.

Mr. Williams also alleges that he never falsified any time sheet however, he admitted that the writing on the time sheet for November 1, 2006 showing the time worked for that day, when he admittedly was not at work, was in his handwriting and was false (Exhibit "O", Tr. 142-144, Exhibit "AM").

As a matter of law , pretext cannot be established by arguing – as plaintiff attempts to do here- that the employer's reason for terminating him was wrong. *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 169 ( 2d Cir. 2001) (affirming summary judgment; it is "entirely lawful for an employer to … terminat[e] an employee who the employer in good faith believes recently engaged in [misconduct]" even if the misconduct never in

fact occurred.); *Cruz*, 202 F.3d at  (affirming summary judgment; employer's explanation for discharge – i.e., choosing not to credit plaintiff's claim that she slapped a co-worker in self-defense cannot constitute a pretext for discrimination); *Minton v. Lenox  Hill Hospital*, 160 F. Supp.2d 687, 696 (S.D.N.Y. 2001) (granting summary judgment; "even if [plaintiff's supervisors] were wrong in believing the complaints of [his co-workers] over plaintiff's denials… [an employer] need only believe in good faith the allegations against an employee, regardless of whether the allegations are true");

By asserting that defendants were wrong  and that he was not  terminated for cause Mr. Williams invites the Court "to second guess [Palladia's] business decisions or to question [Palladia's] means to achieve a legitimate goal". *Dister v. The Continental Group*, *Inc.* 859 F.2d 1108, 1116 (2d Cir. 1998) (summary judgment affirmed; that an employer made a poor business judgment in discharging an employee is insufficient to establish a genuine issue of fact as to the credibility of the employer's reasons). Something that the Court should not do as it is well established that the Court is not to "sit as a super personnel department' to reexamine Palladia's personnel decision. *Byrnie v. Town of Cromwell, Bd. of Educ.* 243 F. 3d 93, 103 (2d Cir. 2001); *Scaria v. Rubin,* 17 F. 3d 652, 654-655( 2d Cir. 1997). See *Alfano v. Costello*, 294 F. 3d 365, 377 (2d Cir. 2002) (order dismissing termination claim affirmed; by sitting as a super-personnel department and second guessing employers' business decisions "federal courts will become a court of personnel appeals" when the court, instead, should be preventing unlawful practices); *Ascione v. Pfizer, Inc.* 312 F. Supp.2d 572, 578 ( S.D.N.Y. 2004), *aff'd* 138 Fed. Appx. 347 (2d Cir. 2005) (granting summary judgment; there is no

discriminatory discharge where employer believes that the employee engaged in misconduct).

Simply, Mr. Williams was terminated based upon all of the information given to Ms. Workman indicating that he had left his post at Dreitzer for a number of hours, leaving the facility without security, and that he had falsified his time sheet. Undoubtedly, Mr. Williams disagrees with this decision, however, he has submitted no evidence to support any other interpretation other than it was for cause.

**A.    The Same Actor Inference Negates Any Claim of Pretext:**

In addition to their being no evidence of pretext, Mr. Williams' position is also belied by the "same actor inference."

When the same actor hires a person who is within a protected class, and then later fires that same person "it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire." *Grady v. Affilated Cent., Inc.* 130 F.3d 553, 560 (2d Cir. 1997) *cert. den.* 525 U.S. 936, 119 S. Ct. 349, 142 L.ed2d 288 (1998). So long as one management-level employee "played a substantial role in both decisions" the same actor inference is applicable. *Campbell v. Alliance Nat'l Inc.*, 107 F.Supp.2d 234, 249-250 (S.D.N.Y. 2000), citing *Ralking v. NYCTA*, 64 F. Supp.2d 989, 1000( E.D.N.Y. 1999) which held that the same actor inference applied where a manager, who may not have actually hired employee-plaintiff interviewed the plaintiff and made the recommendation to hire her and played a significant role in the decision to fire her. "The underlying rationale for the inference it simple: it is suspect to claim that the same manager who hired a person in the protected class would suddenly develop an aversion to

members of that class." *Ruane v. Continental Casualty Corp.* 1998 WL 292103 at *8 (
S.D.N.Y. June 3, 1998).

Moreover, where the period between hiring and firing is under two years the same
actor inference remains significant. *Grady*,  130 F, 3d at 560, *Cambpbell*, 107 F. Supp. 2d
at 248,

Here, the same person, Ms. Workman, who hired plaintiff knowing he was  a
man, also made the decision to terminate him about one year later. The fact that Ms.
Workman made both the decisions strongly suggests that invidious discrimination was
unlikely. See *Grady* 130 F. 3d at 56.

Simply, Mr. Williams is unable to show that Palladia's non-discriminatory
business reason for terminating him was a pretext for gender discrimination and both the
Title VII and NYSHRL claims should be dismissed.

## POINT V

## THE STATE CLAIMS SHOULD BE DISMISSED.

To the extent that Mr. Williams asserts discrimination claims under the NYSHRL
these claims are barred by the doctrine of election of remedies.  Since Mr. Williams
elected to file a complaint of discrimination  (Exhibit "E") with the State Division which
dismissed the complaint on the merits and not for administrative convenience (Exhibit
"F") this Court may not consider these state claims. *Lewis v. North General Hospital* 502
F. Supp.2d 390, 400 ( S.D.N.Y.2007); *Al-Haideri v. The Trustees of Columbia University
In the City of New York*, 2007 WL 2187102 at *3 (July 26, 2007).

**A.    The NYSHRL Claims Are Barred By The Doctrine of Election of Remedies.**

Section 297 (9) of the NYSHRL states in part that:

> Any person claiming to be aggrieved by an unlawful
> discriminatory practice shall have a cause of action in any
> court of appropriate jurisdiction for damages… and such
> other remedies as may be appropriate … unless such person
> had filed a complaint hereunder or with any local
> commission on human rights.

Thus, "once brought before the NYSDHR, [NYHRL claims]may not be brought as a plenary action before another court." *York v . Ass'n of the Bar of the City of New York*, 286 F.3d 122, 127  (2d Cir. 2002) *cert. den.* 537 U.S. 1089, 123 S. Ct. 702, 154 L.Ed2d 633 (2002). *Moodie v. Federal Reserve Bank*, 58 F. 3d 879, 882 (2d Cir. 1995).  This election of remedies also applies to the Federal Courts as well. *Whidbee v. Garzarelli Food Specialists, Inc.* 223 F.3d 62,75 (2d Cir. 2000); *White v. Home Depot, Inc.* 2008 WL 189865 at * 3, 4 ( E.D.N.Y. Jan. 17, 2008).

Here Mr. Williams filed a Complaint of Discrimination with the State Division on or about January 9, 2007. Palladia responded to the State Division Complaint by submitting a Statement of Position (Spund Aff. ¶ 7).  On or about March 8,  2007,  the State Division issued a Determination and Order After Investigation dismissing the Complaint on the merits finding that there was no evidence  that Mr. Williams "sex was a factor in how he was treated by respondents or that respondent's termination of his employment.  The investigation revealed that the respondent continued to employ other male House Monitors after the complainant was terminated." ( Spund Aff. ¶ 8 – Exhibit "F"). .  Mr. Williams did not appeal to the New York State Supreme Court, as was his right and accordingly cannot relitigate the state claims here. *York*, 286 F. 3d at 127.

80049419.4

21

## SUBMISSION

For the reasons set forth herein, defendants' motion should be granted in its entirety and the Complaint dismissed.

Dated: Garden City, New York
       June 27, 20089

                              Respectfully submitted,
                              DAVIDOFF MALITO & HUTCHER LLP

                              By: _____
                                  Mark E. Spund (MES 4705)
                                  Attorneys for Defendants
                                  200 Garden City Plaza, Suite 315
                                  Garden City, New York 11530
                                  (516) 248-6400

To:    Charles Williams
       Plaintiff pro se
       5 West 91st Street, # 5E
       New York, New York 10024